IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANE A. LYBARGER, ANDREW W. LYBARGER, and ROBERT E. DAILEY, | |
| Plaintiffs, | Case No. 19-cv-369-SPM |
| v. | |
| SCOTT SNIDER, ANDREW HARVARD and JAMIE JAMES, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 59) filed by Defendant Scott Snider ("Snider"). For the reason's set forth below, the Court **GRANTS** the Motion for Summary Judgment.

## PROCEDURAL HISTORY

On April 2, 2019, plaintiffs Shane Lybarger ("Shane"), Andrew Lybarger ("Andrew") and Robert Dailey ("Robert"), collectively known as plaintiffs, filed their seven-count complaint against Harvard and James, who were police officers for the City of Centralia, Illinois and Scott Snider ("Snider") who was a police officer for the City of Wamac, Illinois (Doc. 1). Specifically, the allegations relate to an incident that occurred during the evening hours of April 2, 2017 (*Id.*).

On June 4, 2019, Snider filed his answer, along with a motion to dismiss for failure to state a claim (Docs. 14, 15). On June 10, 2019, Harvard and James filed their answer and also asserted a motion to dismiss (Docs. 16. 17).

On June 25, 2019, a motion to amend/correct complaint was filed by all plaintiffs (Doc. 18). On June 26, 2019, leave to file was granted and the amended complaint was filed, making the prior motions to dismiss moot (Docs. 19, 20). The amended complaint was virtually identical to the original complaint, but it removed Count VII, which was the basis of the motions to dismiss. The following counts were asserted in the amended complaint:

- (I) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 for unlawful detention against all defendants (*Id.* at pp. 9-10*)*;

- (II) All plaintiffs allege violation of civil rights under 42 U.S.C. § 1983 for unlawful search against all defendants (*Id.* at pp. 10-11*)*;

- (III) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 for unlawful arrest against all defendants (*Id.* at pp. 11-12*)*;

- (IV) Shane alleges violation of civil rights under 42 U.S.C. §1983 for unlawful confiscation of property against Snider (*Id.* at pp. 12-13*)*;

- (V) Robert alleges violation of civil rights under 42 U.S.C. §1983 for unlawful confiscation of property against Snider (*Id.* at pp. 14-15*)*;

- (VI) All plaintiffs allege violation of civil rights under 42 U.S.C. §1983 for retaliation against all defendants (*Id.* at pp. 15-16*)*; and,

Counts I through V are brought pursuant to the Fourth Amendment while Count VI is brought pursuant to the First Amendment (Doc. 20). On July 2, 2019, Harvard and James answered the amended complaint (Doc. 22). On July 3, 2019, this case was assigned CJRA Track B and was set for final pre-trial conference on May 21, 2020 with a presumptive jury trial month of June 2020 (Doc. 23). On July 8, 2019, Snider answered the complaint (Doc. 24).

On December 18, 2019, a joint motion for extension of time was filed to extend the trial date (Doc. 44). On December 19, 2019, the motion was granted and the

discovery cutoff was extended to June 5, 2020 with a dispositive motion deadline of June 23, 2020 (Doc. 45). At that same time, the final pre-trial was continued to September 10, 2020 with October 2020 being the presumptive jury month (*Id.*). On June 16, 2020, a staff note indicates that discovery was still proceeding, so the pretrial and jury dates were cancelled and the dispositive deadline was extended to August 24, 2020[1]. On July 23, 2020, a joint motion to extend dispositive motion was filed, but there was no mention of pre-trial conference of jury setting (Doc. 53). On that same date, the dispositive deadline was extended until October 26, 2020 (Doc. 54). On October 5, 2020, another joint motion for extension of time for dispositive motion deadline was filed, and granted, extending the deadline for dispositive motions to December 18, 2020 (Docs. 55, 56).

On December 18, 2020, Harvard and James filed their motion for summary judgment, which included exhibits A-Z (Doc. 58). On December 21, 2020, Snider filed his motion for summary judgment and supporting memorandum of law that included exhibits 1-9 (Docs. 59, 60). On January 22, 2021, plaintiffs filed their responses to the motions, along with memorandums of law in opposition to motions (Docs. 61-64). On February 5, 2021, Snider, Harvard and James filed their replies to plaintiffs' opposition to their motions for summary judgment. (Docs. 66, 67).

At this time, there are no pending hearings, conferences or even a trial date.

---

[1] The COVID-19 pandemic was also prevalent during this timeframe, so most matters were automatically extended via Administrative Order.

## STATEMENT OF FACTS[2]

Prior to this incident, plaintiffs had watched videos on YouTube of First Amendment Audits ("FAA"). At some point, Robert created a YouTube channel called the "Southern Illinois Observers" where he posted videos of his observations of law enforcement. On April 2, 2017, before going out, plaintiffs met at Shane's house with the intent of observing people in public, specifically law enforcement. They had a police scanner, camcorder and cell phones with them so they could listen to activity and drive to that location to observe. After leaving Shane's house and driving for less than 15 minutes around Centralia, Illinois in a black Dodge Durango, plaintiffs observed a female, later identified as Lisa Thompson ("Lisa"), driving with a young child on her lap while holding a cell phone. Plaintiffs began following Lisa, but had no contact with her until she parked her vehicle.

Lisa drove to her mother-in-law's trailer located on Jana Drive in Wamac, IL. There was one way in and one way out of Jana Drive. A sign was at the entrance, but it is unclear if it said "No Trespassing" or "Private Property". Once parked, Lisa got out of her vehicle with her child and plaintiffs immediately began filming her and her young son. A male, later determined to be Lisa's husband, Eric Thompson, came outside to see what was going on and Lisa passed her son to him and told him to take the child inside. Shane told Lisa that she had been driving poorly and she replied that she was driving her 10-month old son home from the hospital and he was sick. Shane advised that it was still illegal and if there was an accident, her young son would die. Plaintiffs were filming

---

[2] In an effort to mete out immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the Undisputed Facts provided by the parties herein. Additionally, this statement is compiled from the depositions of the parties, Mr. & Mrs. Thompson, as well as the video recording taken by plaintiffs that night.

this entire time and Lisa told them it was against the law, which they denied. Commentary between Lisa and the three plaintiffs continued and escalated to where they were shouting at each other. Thompson was 5' 1". Plaintiffs were all larger than her at 5' 11" and 325 pounds, 5' 9" and 300 pounds and 6' 1", respectively.

Robert exited his vehicle and followed Thompson, because he expected a confrontation. Robert accused Lisa of flipping out and told Shane and Andrew to keep recording. Lisa complained that plaintiffs were recording her without her consent, which she thought was illegal. On two occasions, Robert told Lisa that if she thought it was illegal to videotape someone, it was "bullshit" and she was an "idiot" for believing it. Robert also told her to call the police. Lisa asked Robert to delete the video and admitted she had been wrong to drive with her child in her lap.

Eric also tried to get plaintiffs to leave and told them they were on private property, but they continued to record. Lisa told them she was calling the police and Robert said it was good and she should. Lisa is heard speaking with dispatch and telling them she needs a man removed off of her property. She told dispatch she did not know the man, but he refused to leave. She said she was driving with her son on her lap which she admitted was illegal, but said the man was standing on her property recording her even after she asked him to leave. Dispatch is then heard requesting Officer Snider to respond for a male subject removal.

Before Snider arrived, Robert asked Shane if his "livestream" was ready. Andrew is heard offering his phone charger. Andrew mentioned that the area was marked "private", but he did not know if Jana Road was a road or not and Robert responded that it was not Lisa's road. Andrew commented that it might be a private road, but Robert

Page **5** of **16**

again said that it was certainly not Lisa's road. Andrew indicated that Robert did go right up in her driveway, and someone just replied, "Oh well".

Office Snider of the Wamac Police Department responded to the scene and Lisa spoke briefly with him. At this point, Robert tells Shane and Andrew they can roll up the car windows because they did not have to answer any questions. When Snider tries to ask what is happening, Robert interrupts and asks for his name. Snider provides his name, and when asked, his badge number as well. Snider asked to see identification two times, with the second leading to an argument from plaintiffs about why he needed them and what crime they were suspected of committing. At no time, did plaintiffs provide any identification. Snider explained he was investigating Lisa's call about a suspicious person and advised that he contacted Centralia Police Department for assistance. Plaintiffs continued to argue with Snider about what had happened, and he advised they were obstructing his investigation.

Officer Harvard with the Centralia Police Department arrived on scene and attempted to speak with plaintiffs; however, Robert interrupted and asked if they were free to go. Harvard advised it was Snider's decision because it was his investigation. Snider indicated that he had not yet been able to interview Mrs. Thompson and confirmed that plaintiffs were being detained.

Officer James with the Centralia Police Department next arrived on scene and met with Snider, Harvard and Lisa who stated that she did not know plaintiffs and that they were videotaping her and her child and refused to leave. The plaintiffs were in and/or near their vehicle and could not hear Lisa speaking with the officers.

As the defendants approached plaintiffs' vehicle, Robert reminded Shane and Andrew that they did not have to answer any more questions because they have already told their story multiple times. Robert asked Andrew and Shane if the car doors were locked. James told plaintiffs that he did not want to arrest them and Shane responded that they could not arrest him. Robert asked about the crime they were suspected of committing and James tried to explain about disorderly conduct, but plaintiffs cut him off. James tried to explain Lisa's version of events, but Shane demanded that the Illinois State Police be contacted. When James refused to contact the state police, Shane said that he would contact them. James then informed them that they were under arrest and Snider confirmed the arrest was for disorderly conduct and obstruction of justice. Lisa pressed charges and provided a statement, as did Shane and Andrew. Criminal charges were brought, but an order of *nolle prosequi* was entered.

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party". *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633 (7th Cir. 2008). The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993)).

## ANALYSIS

Counts I through III and count VI are asserted against all defendants, including Snider, and are all brought pursuant to 42 U.S.C. §1983, alleging unlawful detention, unlawful search, unlawful arrest and retaliation (retaliatory arrest), respectively (Doc. 20). Specifically, plaintiffs claim that defendants Harvard and James had no reasonable suspicion or probable cause to detain them, search them or arrest them. (*Id*.). They further claim they were engaged in constitutionally protected conduct when they refused to comply with the officers' requests and that there is a causal connection between their arrest and their refusal to provide identification. *Id.*, pp. 15-16).

Counts IV and V are also asserted against Snider and are brought pursuant to 42 U.S.C. §1983 (Doc. 20). In count IV, Shane alleges that Snider unlawfully confiscated his vehicle (Doc. 20, pp. 12-13). In count V, Robert alleges that Snider unlawfully

confiscated his video camera (Doc. 20, pp. 14-15).

Counts I through V are brought pursuant to the Fourth Amendment, while Count VI is brought under the First Amendment.

### A. Law

Section 1983 creates a species of tort liability for "the deprivation of any rights, privileges, or immunities secured by the United States Constitution. *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). It allows citizens whose constitutional rights have been violated by public officials to sue in their individual capacity. *Fleming v. Livingston County, Ill,* 674 F.3d 874, 878 (7th Cir. 2012). Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997).

The Fourth Amendment establishes the minimum constitutional "standards and procedures" not just for arrest, but for "detention". *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). It prohibits government officials from detaining a person in the absence of probable cause. *Id*. The Fourth Amendment also protects against unreasonable seizures; a person is seized whenever officials restrain his freedom of movement such that he is not free to leave. *Brendlin v. California,* 551 U.S. 249, 254 (2007). In other words, an arrest is a seizure of a person, so it must be reasonable under the circumstances. *District of Columbia v, Wesby,* 138 S.Ct. 577, 586 (2018).

It is important to note that the Fourth Amendment does not forbid all or even most seizures – only unreasonable ones. *Torres v. Madrid,* 141 S.Ct. 989 (2021). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime". *Manuel v. City of*

*Joliet, Ill.*, 137 S.Ct. 911, 918 (2017)(citing *Bailey v. United States,* 568 U.S. 186, 192 (2013).

The Fourth Amendment guarantees citizens the right to be free from unreasonable searches. *Carpenter v. U.S.,* 138 S.Ct. 2206, 2213 (2018). Generally a warrant must be obtained showing reasonable grounds to conduct a search; however, exceptions have been carved out to this general rule, including exigent circumstances and search incident to arrest. *Id.* at 2222. The Supreme Court has long held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control". *Chimel v. California,* 395 U.S. 752, 763 (1969). That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. *Arizona v. Gant,* 556 U.S. 332, 339 (2009); *Chimel,* 395 U.S. at 763 (noting that searches incident to arrest are reasonable "*in order to* remove any weapons [the arrestee] might seek to use" and "*in order to prevent* [the] concealment or destruction" of evidence (emphasis added)). Indeed, a warrantless search of a vehicle's passenger compartment is reasonable when there is a belief that evidence relevant to the crime might be found inside. *Riley v. California,* 573 U.S. 373 (2014). On that same thread, evidence of a crime could be found on that video recorder itself.

As for confiscation of property alleged in count IV, Shane's claim is akin to a to a search – "Snider searched and inventoried the contents of Shane's SUV" (Doc. 20, p, 13, ¶ 71). As for confiscation of property alleged in count V, Robert asserted that Snider had

"no probable cause to confiscate [his] video camera" and that "[it] was confiscated as consequence unlawful arrest" (Doc. 20, P. 14, ¶¶73, 74).

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in a protected activity. *Hartman v. Moore*, 547 U.S. 250, 256, (2006). To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman,* 547 U.S. at 259. The plaintiff pressing a retaliatory arrest claim must also plead and prove the absence of probable cause for the arrest. *Nieves v. Bartlett,* 139 S.Ct. 1715, 1724 (2019).

### B. Defenses

#### 1. Probable Cause

Probable cause is an absolute defense to any claim under § 1983 against police officers for wrongful arrest, false imprisonment [unlawful detention] or malicious prosecution. *Chelios v. Heavener,* 520 F.3d 678, 685 (7th Cir.2008); *Mustafa v. City of Chicago,* 442 F.3d 544 (7th Cir. 2006). Probable cause "is not a high bar". *Kaley v. United States,* 134 S.Ct. 1090, 1103 (2014). However, it is a bar to claims for retaliatory arrest, unlawful search and unlawful detention. *Gerstein,* 420 U.S. at 111; *Bailey,* 568 U.S. at 192; *Nieves,* 139 S.Ct. at 1724.

Courts look to all of the facts and circumstances known to the officer *at the time* of the arrest to determine whether the officer had probable cause to make an arrest. *Abbott v. Sangamon County,* 705 F.3d 706, 714 (7th Cir. 2013) *(emphasis added).* A probable cause determination is an objective inquiry. *Whren v. United States,* 517 U.S. 806, 813 (1996). It is a fluid concept that relies upon the common-sense judgment of the

officers based on the totality of the circumstances. *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006). Probable cause deals with probabilities, not hard certainties. *Illinois v. Gates,* 462 U.S. 213, 231 (1983). It requires more than a hunch, but not necessarily a finding that it was more likely than not that the arrestee was engaged in criminal activity – the officer's belief that the arrestee was committing a crime need only be reasonable. *Henry v. United States*, 361 U.S. 98 (1959). In fact, the officer's belief need not be "correct or even more likely true than false, so long as it is reasonable." *Fleming,* 674 F.3d at 878-879.

Retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged conduct and the plaintiff's injury. *Reichle v. Howards*, 566 U.S. 658, 668, (2012). Officers frequently must make "split-second judgments" when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if he is "ready to cooperate" or rather "present[s] a continuing threat." *Lozman v. City of Riviera Beach Fla,* 138 S.Ct. 1945, 1953 (2018) (citing *District of Columbia v. Wesby,* 138 S.Ct. 577, 587–588 ("suspect's untruthful and evasive answers to police questioning could support probable cause")).

### 2. Qualified Immunity

Officers are also afforded the extra layer of protection of qualified immunity. *Thayer v. Chiczerski,* 705 F.3d 237, 247 (7th Cir. 2012). Qualified immunity is immunity from suit rather than a mere defense to liability. *Pearson,* 555 U.S. at 237. It protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known. *Fleming,* 674 F.3d at 879 (quotations omitted).

An officer "is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed'." *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir.1998)); *see also Reher v. Vivo,* 656 F.3d 772, 777 (7th Cir.2011) (granting qualified immunity to officer who could have reasonably, but mistakenly, believed that plaintiff had committed disorderly conduct even though the information available to the officer at the time was probably too vague to support an arrest). "[Q]ualified immunity protects police officers who reasonably interpret an unclear statute." *Mustafa,* 442 F.3d at 549. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Butz v. Economou,* 438 U.S. 478, 507 (1978). When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law. *Ashcroft v. Al-Kidd,* 131 S.Ct. 2074, 2085 (2011)(quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Police officers are allowed to make reasonable mistakes. *BeVier v. Hucal,* 806 F.2d 123, 126 (7th Cir. 1986). The question is whether a reasonable officer could have believed that plaintiffs' arrests were lawful in light of the clearly established right to be free from arrest without probable cause and the information possessed at the time of arrest. *Id.*

### C. Discussion

Because the crucial point of inquiry for a probable cause determination is what the officer knew at the time of the arrest, the Court must look into the facts of the case from the officer's viewpoint. *See Neita v. City of Chicago,* 830 F.3d 494, 497 (7th Cir. 2016). In this case, it was Snider who made the probable cause determination. Snider

was deposed and testified that "I made the decision for the arrest of the individuals for obstruction if they continued not to provide I.D. based on my investigation." (Doc. 58-7, p. 21). He further says, "… they refused to comply with the investigation by supplying their identification." (*Id.*, p. 41).

Snider was dispatched to Jana Drive. When he arrived, he observed three males and a female, whom he presumed was the caller. Snider spoke with the female during his investigation in an attempt to determine what happened on April 2, 2019. He also tried to speak with the plaintiffs, but they refused to answer questions and refused to provide identification, much less provide their names. The only information Snider had was what was provided by Lisa Thompson. She told him that she did not know the plaintiffs and that they followed her home and videotaped her and refused to leave her property. Her statement raised a reasonable suspicion that a crime had occurred. We do not know what would have happened if the plaintiffs had complied with his requests, but their refusal was enough to sustain the officers' subsequent actions.

It is immaterial what Snider told plaintiffs they were being arrested for because an arrest can be supported by probable cause that the arrestee committed *any* crime, regardless of the officer's belief as to which crime was at issue. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (*emphasis added*). Furthermore, it is not constitutionally required that a party be advised of the reason for his arrest when he is taken into custody. *Id.* Snider may have told plaintiffs they were under arrest for obstructing his investigation for not providing identification, but he was investigating everything that transpired that evening, including but not limited to trespass, disorderly conduct and the videotaping. Without the plaintiffs' cooperation he could not determine what, if any,

crimes had been committed, but he had a reasonable suspicion that led to probable cause that a crime had been committed that evening prior to his arrival at Jana Drive.

As for the search of the vehicle and seizure of the camcorder, both were incident to a lawful arrest. It was reasonable to presume that evidence could be in Shane's vehicle and on the camcorder. Because Snider had probable cause to arrest, he had probable cause to seek evidence in support of criminal conduct.

Although whether there is probable cause is usually a jury question, when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them, a court may decide the issue. *Booker v. Ward,* 94 F.3d 1052, 1058 (7th Cir. 1996). In this case, no reasonable juror could conclude that there was no probable cause in this case. It is irrelevant that *Nolle Prosequi* orders were entered against these plaintiffs. The officers had probable cause to detain plaintiffs during the investigation, they had probable cause to arrest them for not cooperating in the investigation, and they had probable cause to searched to verify they did not possess any weapons. As such, plaintiffs' claims against Harvard and James fail as a matter of law.

Assuming arguendo that there was no probable cause to arrest plaintiffs, they would be entitled to qualified immunity. Harvard and James were acting in their official capacity on April 2, 2017. They, along with Snider, believed there was probable cause for the arrest. If their belief was mistaken, it was reasonable to believe that probable cause existed.

Neither Harvard nor James violated any clearly established right. They believed they had probable cause, and if there was no probable cause, that belief was a reasonable

mistake. There is no material issue as to the facts of this case. As such, Harvard and James are entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant Scott Snider (Doc. 59). This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to terminate Snider as a party-defendant and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: _____**

<u>**/s/ Stephen P. McGlynn**</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**